IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **ATLANTIC VA AG, LLC,** <br><br> **Plaintiff**, <br><br> v. <br><br> **KIA MOTORS AMERICA, INC.;** <br><br> **SERVE:** <br>    CT Corporation System <br>    4701 Cox Road, Ste 285 <br>    Glen Allen, VA 23060-6808 <br><br> **Defendant,**. | Case No. 2:20-cv-490 |

**COMPLAINT**

Plaintiff Atlantic VA AG, LLC ("Atlantic"), by and through undersigned counsel, and for its Complaint against Defendant Kia Motors America, Inc. ("KMA"), states and alleges as follows:

**INTRODUCTION**

1. This is a case about KMA unlawfully withholding its consent to the sale of two Kia dealerships located in Hampton Roads.

2. Because of the uneven bargaining power between manufacturers and their dealers, Virginia and other states enacted dealer protection statutes to level the playing field and put the parties on more equal footing. Otherwise manufacturers like KMA would have free reign over

their dealer network, imposed through adhesion contracts, thereby limiting consumer choice and intrabrand competition.

3. The Virginia legislature chose to regulate many facets of the dealer-manufacturer relationship, including transfers of ownership at issue in this action.

4. KMA violated Virginia law when it unlawfully withheld consent to Atlantic's acquisition of Defendants Kia Greenbrier and Lynnhaven Kia.

5. Virginia law is clear: there are only four grounds deemed reasonable to deny an application to purchase a dealership. Ignoring the law, KMA cited none of these reasons when it unlawfully refused to allow Atlantic to purchase Kia Greenbrier and Kia Lynnhaven.

6. As a result of KMA's actions, Atlantic seek the following under Va. Code §§ 46.2-1569(3) and 46.2-1569(3a): (i) a mandatory injunction directing that KMA approve and authorize the purchase and sale of Kia Greenbrier and Kia of Lynnhaven; (b) money damages for KMA unlawfully withholding consent to the sale of both Kia dealerships; and (c) reasonable attorney's fees and costs of litigation.

## PARTIES

7. Plaintiff Atlantic is a limited liability company organized and existing under the laws of the State of Florida, with a principal place of business in Miami Lakes, Florida. It is an "applicant" within the meaning of Va. Code §§ 46.2-1569(3) and 46.2-1569(3a). Atlantic, therefore, is a citizen of the state of Florida for purposes of this Court's jurisdiction under 28 U.S.C. § 1332.

8. On information and belief, Defendant KMA is a corporation organized and existing under the laws of the State of California, with its principal place of business at 111 Peters Canyon

Road, Irvine, California 92606. KMA, therefore, is a citizen of the state of California. KMA is a "manufacturer" and "distributor" within the meaning of Va. Code § 46.2-1500.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and, on information and belief, Atlantic and KMA are citizens of different states.

10. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts giving rise to the claims occurred in this jurisdiction and the Southern Kia Greenbrier and Southern Kia Lynnhaven dealerships are located in this District.

## FACTUAL ALLEGATIONS

11. Faisal Ahmed and Ali Ahmed, father and son, are the principals of Atlantic. Since immigrating to the United States in 1973, Faisal worked his way up in the automobile industry. His career includes positions with a large private dealer group in Florida and AutoNation, the largest publicly traded dealer group in the United States.

12. Faisal's son, Ali, is a graduate of MIT. While majoring in economics, mechanical engineering and material science, the car business was in his blood like his father's. So he joined Faisal and helped grow their dealer group from its humble beginnings into a multi-state, multi-franchise dealer group.

13. The brands operated under the "Atlantic" umbrella include Mercedes Benz, Nissan, Mitsubishi, Chrysler, Jeep, Dodge, Ram, Alfa Romeo, Chevrolet, GMC, Volkswagen and Kia. These stores are located in Maryland, Pennsylvania, Florida, and Virginia. The Ahmeds employ over 1000 people and their gross revenue in 2019 exceeded $900,000,000.

14. The Ahmeds wanted to expand into Hampton Roads, and in furtherance of this goal entered into an asset purchase agreement on September 30, 2019 with Bill Shepherd, the Principal of the Southern Auto Group, for its entire operations. The dealerships under the Southern umbrella include Chrysler, Jeep, Dodge, Ram, Kia, Alfa Romeo, Fiat, GMC and Volkswagen franchises and related real estate holdings.  The value of the Kia franchises alone far exceeds $75,000

15. Prior to selling its dealerships to the Ahmeds and Atlantic, the Southern Auto Group was required to seek each manufacturer's consent to the sale. If a manufacturer turned down the sale of its franchise to Atlantic, then Atlantic could not acquire that particular store.

16. Franchise agreements like KMA's are boilerplate agreements that dealers typically have little or no role in negotiating or drafting. They are the definition of adhesion contracts and written to benefit the manufacturer. These boilerplate agreements, including KMA's, purport to give the manufacturer sole discretion to approve or deny transfers of ownership of dealerships.

17. This imbalance in bargaining power has led the Virginia legislature to expressly regulate many facets of the dealer/manufacturer relationship, including transfers of ownership.

18. The provisions of Va. Code § 46.2-1569 expressly override the terms of any franchise agreement.

19. In pertinent part, Va. Code §§ 46.2-1569(3) and 46.2-1569(3a) limit the grounds for a manufacturer to turn down a proposed transfer.  Specifically it is unlawful for a franchisor:

> 3. To prevent or refuse to approve the sale or transfer of the ownership of a dealership…unless the franchisor provides written notice to the dealer of its objection and the reasons therefor by certified mail or overnight delivery or other method designed to ensure delivery to the dealer at least 30 days prior to the proposed effective date of the transfer, sale, assignment, or change. No such objection shall be sufficient unless the failure to approve is reasonable. <u>Notwithstanding the provisions of subsection D of § 46.2-1573, the only grounds that may be considered reasonable for a failure to approve are that an individual who is the applicant or is in control of an entity that is an applicant (i) lacks good moral character, (ii) lacks reasonable motor vehicle dealership management</u>

<u>experience and qualifications, (iii) lacks financial ability to be the dealer, or (iv) fails to meet the standards otherwise established by this title to be a dealer</u>. No such objection shall be effective to prevent the sale, transfer, assignment, or change if the Commissioner has determined, if requested in writing by the dealer within 30 days after receipt of an objection to the proposed sale, transfer, or change, and after a hearing on the matter, that the failure to permit or honor the sale, transfer, assignment, or change is unreasonable under the circumstances….

3a. To impose a condition on the approval of the sale or transfer of the ownership of a dealership by the sale of the business, stock transfer, or otherwise if the condition would violate the provisions of this title if imposed on the existing dealer.

In the event the manufacturer…takes action to prevent or refuse to approve the sale or transfer of the ownership of a dealership…, without a statement of specific grounds for doing so that is consistent with subdivision 3 hereof or imposes a condition in violation of subdivision 3a hereof, that shall constitute a violation of this section. The existing dealer may request review of the action or imposition of the condition in a hearing by the Commissioner. If the Commissioner finds that the action or the imposition of the condition was a violation of this section, the Commissioner may order that the sale or transfer be approved by the manufacturer, factory branch, distributor, or distributor branch, without imposition of the condition. If the existing dealer does not request a hearing by the Commissioner concerning the action or the condition imposed by the manufacturer, factory branch, distributor, or distributor branch, and the action or condition was the proximate cause of the failure of the contract for the sale or transfer of ownership of the dealership, the applicant for approval of the sale or transfer or the existing dealer, or both, may commence an action at law for violation of this section. The action may be commenced in the circuit court of the city or county in which the dealer is located, or in any other circuit court with permissible venue, within two years following the action or the imposition of the condition by the manufacturer, factory branch, distributor, or distributor branch for the damages suffered by the applicant or the dealer as a result of the violation of this section by the manufacturer, factory branch, distributor, or distributor branch, plus the applicant's or dealer's reasonable attorney fees and costs of litigation…. (emphasis added).

20. Under Va. Code § 46.2-1569(3), there are only four enumerated grounds by which a manufacturer can turn down an application to purchase a dealership: (1) the applicant lacks good moral character; (2) the applicant lacks reasonable motor vehicle dealership management experience and qualification; (3) lacks financial ability to be the dealer; or (4) fails to meet the standards otherwise established by this title to be a dealer.

5

21. By letter dated December 5, 2019, KMA informed Atlantic that it rejected its application to acquire Kia Lynnhaven and Kia Greenbrier.

22. First, KMA claimed that Atlantic had not provided pertinent information on it and the Ahmeds necessary for KMA to review the application.

23. Atlantic did in fact provide pertinent information to KMA. Additionally, KMA ignored that it has an existing relationship with the Ahmeds. Contrary to KMA's claim that Atlantic and the Ahmeds have not demonstrated they meet KMA's standards and can comply with the terms and conditions of the KMA franchise agreement, the Ahmeds and other Atlantic affiliates are already parties to KMA franchise agreements and provide KMA with monthly financial information on their operations.

24. Second, KMA "believes" that Atlantic and the Ahmeds "lack reasonable dealership management experience and qualifications." KMA's sole example referenced is support of this belief is the purported poor performance of a Miami Lakes, Florida Kia dealership operated by an affiliate of Atlantic.

25. KMA refers to two metrics of this Miami Lakes dealership that are purportedly unacceptable: (i) its dealer sales efficiency ("DSE") metric is -58%; and (ii) its customer satisfaction scores are below regional averages.

26. DSE is calculated using KMA's market share for the state of Florida, adjusted only for segment popularity.

27. KMA makes no other adjustments to a dealer's DSE based on factors such as local or regional criteria, data and facts.

28. Section 320.64(42)(a) of the Florida Statutes is analogous to Va. Code § 46.2-1572.4.A, which prohibits the use of unfair, unreasonable, and inequitable sales performance standards like DSE to evaluate a dealer's performance:

> Any performance standard or program that is used by a manufacturer or distributor for measuring dealership performance and may have a material effect on a dealer, and the application of any such standard or program by a manufacturer or distributor, <u>shall be fair, reasonable and equitable</u>, and if based upon a survey, shall be based upon a statistically valid sample. (emphasis added).

29. Fla. Stat. § 320.64(42)(a) expressly prohibits manufacturers from establishing, implementing, or enforcing "criteria for measuring the sales or service performance of its franchised motor vehicle dealers in this state which have a material or adverse effect on any motor vehicle dealer and which: (1) are unfair, unreasonable, arbitrary or inequitable; or (2) do not include all relevant and material local and regional criteria, data, and facts."

30. Performance standards like DSE have been found unlawful under various states' laws because they do not account for local factors such as demographics and consumer taste beyond preferences for certain segments of vehicles, such as minivans, trucks, or midsize cars.[1]

31. Fla. Stat. § 320.64(42)(a) expressly prohibits the use of performance standards that do not take into account relevant and material local factors. DSE is unlawful under Florida law,

---

[1] *See, e.g.*, *Beck Chevrolet Co., Inc. v. General Motors, LLC*, 27 N.Y.3d 379 (N.Y. 2016) (GM's "RSI" standard was an unlawful performance standard); *Bates Nissan, Inc. v. Nissan North America, Inc.*, Docket No.: 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.LIC (Tx. Office of Admin. Hr'g April 8, 2016) (Nissan's RSE could not be used to terminate dealer's franchise); *In the Matter of the Protest of Dependable Dodge, Inc. v. Fiat Chrysler Automobiles, Inc.*, Protest Nos. PR-2435-15 and PR-2436 (Cal. New Motor Veh. Bd. March 15, 2017) (FCA's termination based on MSR was unlawful); *Capitol Buick GMC, LLC v. General Motors, LLC*, OAH Case No.: MDOT-MVA-12-17-24344 (Md. Office of Admin. Hr'g. July 19, 2018) (GM's termination based on RSI was unlawful); *In the Matter of the Protest of Folsom Chevrolet, Inc. v. General Motors, LLC*, Protest No. PR-2483-16 (Cal. New Motor Veh. Bd. August 13, 2018) (GM's termination based on RSI was unlawful); *Alfredo's Foreign Cars, Inc. d/b/a Larchmont Chrysler Jeep Dodge Ram v. FCA US, LLC*, Case No.: FMD 2019-01 (N.Y. Dep't. of Motor Vehicles November 29, 2019) (FCA's MSR is an unreasonable performance standard).

and therefore cannot be used to evaluate the performance of the Miami Lakes dealership or used as a proxy to gauge Atlantic's qualifications to own and operate Kia Lynnhaven and Kia Greenbrier.

32. By not taking into account local factors that may affect a dealer's ability to achieve DSE, this metric is unreasonable, unfair, and inequitable under Va. Code § 46.2-1572.4(A) and therefore could not be used to evaluate an applicant's performance whether the applicant's dealerships are located in Virginia or Florida.

33. KMA's customer satisfaction metric is also an unlawful performance standard under both Florida and Virginia law.

34. As average-based scores, by definition, half of the KMA dealers in a particular state or region must be deficient and in technical breach of their franchise agreements. Any performance standard that puts half of its dealer body at risk of breach (or which disqualifies half of all potential purchasers) is unfair, unreasonable, and inequitable.

35. Since 2019, the Ahmeds have been approved by manufacturers to acquire the following franchises: Chrysler, Jeep, Dodge, Ram, Fiat, Alfa Romeo, Hyundai, Toyota, Volkswagen, Nissan, Mercedes-Benz, Buick, GMC, Ford, Subaru, and Mazda.

36. Moreover, KMA itself has lauded the Ahmeds' performance as dealers and KMA's Southern Region Executive Director, Percy Vaughn, wrote a letter of recommendation for the Ahmeds to acquire additional franchises. In this letter, Mr. Vaughn wrote:

> I am writing to recommend Ali Ahmed for consideration regarding the acquisition of an OEM automotive dealership.
>
> I have known Ali and his father Faisal Ahmed for over eight years as a Dealer Partner in the South Florida Kia network. Ali is a focused entrepreneur and a pillar in the automotive community.

> From my experience, Ali has been honest, approachable on tough subjects and always works together with the brand towards a win-win solution to challenging situations.

37. In short, KMA's refusal to consent to the acquisition of Southern Kia Greenbrier and Southern Kia Lynnhaven is absurd on its face.

## FIRST CLAIM FOR RELIEF
### Violation of Va. Code §§ 46.2-1569(3) and 46.2-1569(3a)

38. Atlantic repeat and reallege the foregoing paragraphs as if fully set forth herein.

39. This is an action for damages and injunctive relief pursuant to Va. Code §§ 46.2-1569(3) and 46.2-1569(3a).

40. Despite meeting each of the criteria enumerated under Va. Code § 46.2-1569(3) as reasonable grounds to deny an application to acquire a franchised motor vehicle dealer, KMA unlawfully withheld consent to the sale of Kia Greenbrier and Kia Lynnhaven to Atlantic.

41. KMA's actions here are even more egregious in light of the fact that all of the other manufacturers that did business with the Southern Auto Group approved the sale of their respective franchises to Atlantic, and many other manufacturers, including Mercedes-Benz, have approved sales of franchises to Atlantic or its affiliates.

42. Atlantic and the Ahmeds have good moral character, have reasonable motor vehicle dealership management experience and qualifications, have the financial ability to be KMA dealers in Hampton Roads, and meet the standards otherwise established by Title 46.2 of the Virginia Code to be motor vehicle dealers.

43. To the extent that KMA's rejection of the applications is deemed to be a conditional approval on Atlantic or its affiliates achieving unreasonable performance standards, KMA has violated Va. Code § 46.2-1569(3a).

44. By refusing to approve the sale of Kia Lynnhaven and Kia Greenbrier to Atlantic were denied the benefit of their bargain to acquire the entire Southern Auto Group, with the associated economies of scale.

45. As a result of KMA's wrongdoing, Atlantic has been harmed in an amount to be determined at trial but, in any event, greater than $75,000.

46. In addition to damages, Atlantic is entitled to injunctive relief. Specifically, they have no adequate remedy at law for the ultimate benefit of their bargain: the purchase of the entire Southern Auto Group.

47. Atlantic is therefore entitled to a mandatory injunction requiring KMA to approve and authorize the sale of Kia Greenbrier and Kia Lynnhaven to Atlantic without further delay.

## PRAYER FOR RELIEF

**WHEREFORE, ATLANTIC** prays for judgment as follows:

A. For an order finding that KMA violated Va. Code §§ 46.2-1569(3) and 46.2-1569(3a);

B. For an order requiring KMA to approve and authorize the sale of Southern Kia Greenbrier and Southern Kia Lynnhaven to Atlantic;

C. For damages according to proof, as may be allowed by law;

D. For attorney's fees as may be allowed by law;

E. For costs of suit as may be incurred herein; and

F. For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Atlantic demands trial by jury in this action of all issues so triable.

Dated: September 28, 2020

                        Respectfully submitted,

                        **ATLANTIC VA AG, LLC,**

                        *By Counsel*

By:   /s/_____
                        Ryan V.P. Dougherty (VSB No. 78444)
                        William R. Poynter (VSB No. 48672)
                        Kaleo Legal
                        4456 Corporation Lane
                        Suite 135
                        Virginia Beach, Virginia 23462
                        Tele: 757.761.0934
                        wpoynter@kaleolegal.com
                        rdougherty@kaleolegal.com

Of Counsel
Russell P. McRory, Esq.
Michael P. McMahan, Esq.
Charles A. Gallaer, Esq.
Arent Fox LLP
1301 Avenue of the Americas, Fl. 42
New York, NY 10019
russell.mcrory@arentfox.com
michael.mcmahan@arentfox.com
charles.gallaer@arentfox.com.